## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

BRAVA SALON SPECIALISTS, LLC
2401 Daniels Street,
Madison, Wisconsin 53718,

   *Plaintiff*,

  vs.            Case No. 3:22-cv-00695-wmc

SWEDISH HAIRCARE, INC. d/b/a REF
110 Haverhill Road, Unit 105,
Amesbury, Massachusetts 01913,

   *Defendant.*

### AMENDED COMPLAINT

Plaintiff Brava Salon Specialists, LLC ("Brava") by and through its undersigned counsel, for its Amended Complaint against Defendant Swedish Haircare, Inc. d/b/a REF ("REF"), filed pursuant to this Court's order issued on December 29, 2022 (dkt. 18), alleges and states as follows:

### *NATURE OF THE CASE*

1.  In 2015, REF appointed Brava its exclusive dealer of the manufacturer's globally eponymous haircare product line in Wisconsin and Minnesota. At the time Brava was appointed, REF, while successful in Europe, had virtually no presence in Wisconsin or Minnesota and had a limited presence elsewhere in the United States. In the years since, Brava has not only worked tirelessly to develop a market in its territory (which REF enlarged from two states to five), but also assisted in building REF's network across the country by helping build demand for REF products in other territories.

2.      Brava invested significant time, money, and resources into selling and promoting REF products. These efforts included but were not limited to: developing a robust educational and accreditation program for hairstylists to familiarize them with REF products and best practices; increasing its own workforce; and purchasing a $550,000 facility in Madison, Wisconsin to support its work with REF. Brava's dedication to developing and cultivating a market for REF products has resulted in the dealer increasing its sales of REF products to approximately $1.3 million in its most recent fiscal year to date. In the past five years, Brava's sales have increased by over 67%, and the dealer currently derives nearly 95% of its profits from its dealership with REF.

3.      During the course of the parties' relationship, REF has repeatedly recognized Brava's exceptional performance. Indeed, REF named Brava as REF's Distributor of the Year in 2017, 2018, and most recently in 2021.

4.      On account of its success, Brava expanded its operations and now distributes REF products to hairstylists and salons in Iowa and North Dakota. At the close of 2021, REF appointed Brava its exclusive dealer in Florida, and Brava made an additional investment by purchasing a $1.5 million facility in Florida to showcase REF products and expand its education offerings for salon professionals—classes designed to increase the market for REF products.

5.      Despite this mutually beneficial and overwhelmingly successful relationship, in late November 2022, without any notice, REF fundamentally altered Brava's competitive circumstances by: stripping the dealer of its exclusive rights to distribution rights in Florida and appointing a rival distributor, SAYN Beauty, as REF's exclusive Florida dealer; authorizing SAYN Beauty to sell REF products on Amazon to customers in Brava's territory; and prioritizing orders from SAYN Beauty while failing to fulfill Brava orders.

6.      REF's actions violate not only the parties' contract but also the Wisconsin Fair Dealership Law. Brava files this suit in an effort to enjoin the irreparable and existential harm caused by REF's unilateral actions, and seeks preliminary injunctive relief to preserve the status quo and protect its rights while this litigation proceeds.

*PARTIES*

7.      Swedish Haircare, Inc. d/b/a REF is a foreign corporation with its principal place of business at 110 Haverhill Road, Unit 105, Amesbury, Massachusetts, 01913.

8.      REF specializes in manufacturing high-quality haircare products, including, but not limited to, shampoos, conditioners, mousse, and its popular hair-coloring product line. Each product is branded and sold under the trade name "REF." For example, "REF Weightless Volume Shampoo" and "REF Weightless Volume Conditioner" are among its product listings.

9.      REF's registered agent for service of process is Paul Connolly, who is at 1 Tallowood Lane, Amesbury, Massachusetts, 01913.

10.     Upon information and belief, REF is owned by its founder, Jan Ernstberger, and his son, Edward Ernstberger. Jan Ernstberger served as the Chief Executive Office of REF until December 10, 2021 when he handed the reins to Edward Ernstberger. Jan Ernstberger serves as the Chairman of the Board for the company.

11.     Brava is a Wisconsin limited liability company with its principal place of business at 2401 Daniels Street, Madison, Wisconsin 53718. Brava is a Wisconsin-based beauty-products wholesaler that distributes REF haircare products to hairstylists and salons in Wisconsin, Minnesota, Iowa, North Dakota, and Florida.

12.     James P. Marcks is the sole owner and sole member of Brava. Mr. Marcks is a natural person and a citizen of the United States of America who resides at 510 Veterans Road, Stoughton, Wisconsin 53589 and is domiciled in Wisconsin.

### JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.     REF is subject to personal jurisdiction in Wisconsin under Wisconsin law because REF is engaged in substantial and not isolated activities in Wisconsin, Wis. Stat. § 801.05(1)(d), and because REF's conduct has caused injury to Brava in Wisconsin, Wis. Stat. § 801.05(5). As averred below, REF has also expressly consented to personal jurisdiction in this Court via the forum-selection clause in Section 13.7 of the parties' agreement.

15.     This Court is the proper venue for this dispute pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district. As averred below, REF has also designated venue in this Court via the forum-selection clause in Section 13.7 of the parties' agreement.

### FACTS

16.     In 2011, Jim and Jesse Marcks started Brava with the mission to provide hairstylists and salons with high quality, reasonably priced products.  Prior to forming Brava, Mr. and Mrs. Marcks both had experience in the beauty-products industry.

17.     Brava's association with REF began in 2015, when Mr. Marcks met REF executive Paul Connolly at a beauty-product trade show hosted in Las Vegas, Nevada.

18.     Mr. Connolly informed Mr. Marcks that REF, while successful in Europe, was struggling to penetrate the United States market. Mr. Connolly asked Mr. Marcks to consider carrying and developing a market for REF products in Wisconsin and Minnesota.

19.     Following that meeting, Mr. Connolly sent Brava samples of REF products for Mrs. Marcks to use in her own salon. Those samples convinced Mr. and Mrs. Marcks of the potential for REF products.

20.     The REF product line is a unicorn in the haircare industry in that REF products are of exceptional quality, are reasonably priced, and maintain their mystique and reputation from not being available for direct to consumer purchases. These were all material facts in Brava's ultimate decision to become REF's exclusive dealer and invest significantly to develop a market for REF products.

21.     Brava entered into negotiations with Mr. Connolly over the terms on which Brava would represent REF products, and Mr. Connolly and Jan Ernstberger flew to Madison to meet with Mr. Marcks and execute the parties' dealership agreement.

### ESSENTIAL TERMS OF THE PARTIES' AGREEMENT

22.     On March 1, 2015, Brava and REF entered into a Distributor Agreement (the "Agreement") outlining the essential terms that would govern Brava's dealership. The Agreement had a five-year term. The parties subsequently amended the Agreement in 2017 and again in 2019 to extend the initial term of the Agreement on account of Brava's unparalleled performance. As amended, the Agreement currently runs until May 20, 2029. Attached as **Exhibit A** are copies of the Agreement and the 2017 and 2019 amendments.

23.     Under the Agreement, REF granted Brava the exclusive right to purchase and distribute REF products in Wisconsin and Minnesota, *see* Exh. A, § 2.1, and authorized the dealer to use REF's trademarks in connection with the sale of its products. Exh. A, § 7.1.

24.     REF also promised Brava a right of first refusal with respect to any prospective sales of its products in states neighboring Wisconsin and Minnesota which did not have an appointed dealer. Exh. A, § 4.1.

25.     In exchange for the exclusivity and territory privileges, Brava agreed *inter alia* to assume the following obligations:

(a) Sell REF products in the territory;

(b) Maintain a place of business and service personnel sufficient to meet its obligations under the Agreement;

(c) Maintain "net working capital as necessary to enable [Brava] to properly and fully carry out and perform its duties, obligations, and responsibilities under [the] Agreement";

(d) Promptly pay all amounts due to REF;

(e) Use its best efforts to promote the distribution and sale of REF products in the territory;

(f) Refrain from modifying REF products without REF's prior written permission; and

(g) Maintain "full and accurate books and records setting forth its sales of [REF Products]."

Exh. A, § 5.1(a)–(g)

26.     REF acknowledged that it would be "difficult to determine actual damages" in the event that REF materially breached the Agreement. Exh A, §§ 9.1–9.2.

27.     The parties agreed that the Agreement would be governed by and construed in accord with Wisconsin law, and they pledged to litigate any claim arising out of or in connection

6

with the Agreement in the state or federal courts located in Dane County, Wisconsin. Both parties consented to the exclusive personal jurisdiction of such courts. *See* Exh. A, § 13.7.

### *BRAVA WORKS TIRELESSLY TO CREATE A MARKET FOR REF PRODUCTS*

28.     Under the Marcks' stewardship, Brava has exemplified solid business fundamentals, integrity, outstanding sales performance, and exceptional customer service throughout Brava's relationship with REF.

29.     At the beginning of its dealership with REF, Brava was financially reliant on other beauty-product lines, such as label.m but, in response to industry and market conditions, Brava doubled down on developing the marketplace for REF products in the dealer's territory and across the United States, expanding its REF-specific educational programming, warehouse facility, and workforce, among other significant investments. Brava's economic survival now depends entirely on its ability to sell REF products, as the sale of such products accounts for nearly 95% of the dealer's total sales and total profits.

30.     When Brava was first appointed, REF had virtually no presence in Wisconsin or Minnesota and had a limited presence elsewhere in the United States. In its most recent fiscal year, Brava sold approximately $1.3 million worth of REF products across its territory, with approximately $1 million stemming from sales in Wisconsin. Since 2018, Brava's sales of REF products have increased by over 67%, even though for a significant portion of that period the salon industry has faced disruptions caused by the Covid-19 pandemic.

31.     Upon information and belief, Brava leads all REF distributors in gross sales, sales per capita, units sold, and units sold per capita.

32.     Brava has worked extensively to build its relationship with and market for REF products. Examples of these efforts include:

7

(a) Mr. and Mrs. Marcks realized that REF products suffered from salon professionals lacking familiarity with the products and their attributes. Given the quality of the products and the price point, the solution was to launch an effort to educate salon professionals about REF and train them about everything its products can do. Brava worked relentlessly to create an extensive program focused on educating and training hairstylists about REF products and best practices. Brava now offers an expansive series of in-person, online, and on-demand training courses focused solely on REF products, and employs six individuals to serve as educators. Additionally, Brava sends existing customers educational materials twice a year. Brava bears the entire cost of its educational programming, which is so strong that REF has adopted and employs several elements of Brava's education program nationwide, including by using many of Brava's educators. Attached as **Exhibit B** is an award REF gave to Brava in recognition of its outstanding educational program

(b) Since its appointment in 2015, Brava has hosted hundreds of in-person and online promotional events, including Facebook events, trade-shows, dinners, and renting out eminent Madison venues such as the Majestic Theatre, the Edgewater Hotel, and Hotel Red. Brava hosts these events at its own expense.

(c) Also at its own expense, Brava has launched numerous promotional campaigns to encourage its customers to purchase REF products and has given customers in-kind prizes such as new kayaks and paddle boards and free dinners among other awards. Most recently, Brava offered four trips to Florida for a REF customer to promote REF in Ella's Salon in Minnesota. Brava also sends every first-time REF customer a free REF product and provides prospective customers with REF samples.

(d) Brava significantly expanded its workforce to promote and distribute REF products. In 2015, Brava had three employees, including Mr. and Mrs. Marcks. Brava now employs 13 individuals, all of whom dedicate the vast majority, if not all, of their time to REF products. Every employee is highly knowledgeable regarding REF products.

(e) Brava launched an accreditation and certification program for hairstylists to demonstrate their expertise in hair coloring, and Brava's programming promotes REF products ubiquitously. This programming cost approximately $7,500 to launch and costs tens of thousands of dollars every year to maintain.

(f) Brava maintains an active online presence, including creating a private Facebook page in which the dealer promotes REF products and classes to over 500 professional salons and provides online support to salons that use REF products.

(g) During the COVID-19 pandemic lockdown, Mr. Marcks took a $50,000 loan against his residence so that Brava could stay open and continue to supply

8

REF products to its customers. Brava also hired and arranged for guest artists from around the world to promote REF on the private Facebook page virtually everyday during lockdown. And Brava launched www.SaveAStylist.com, where existing Brava salon customers could order REF products for their clients while the salons were closed; because Brava absorbed the expense of shipping the products to consumers while salons were closed, Brava barely, if at all, profited from these sales, but undertook these efforts to continue to promote REF products and support the salons who shelved those products and the consumers who depend on them.

33.     Brava spends nearly $100,000 yearly on efforts to promote REF products. Since 2015, Brava has spent hundreds of thousands of dollars promoting REF.

34.     To accommodate its growing need for storage space, in 2017 Brava purchased a 10,000-square-foot warehouse in Madison, Wisconsin for approximately $550,000. Brava currently stores $115,000 worth of REF product as on-hand inventory at the facility. Brava purchases and distributes REF products for its entire territory through its Madison warehouse. In its most recent fiscal year to date, Brava has bought and sold nearly 120,000 units of REF products. The facility also houses Brava's corporate offices and its on-site training and educational spaces.

35.     Upon REF's request, Brava regularly purchases unneeded and excess inventory.

36.     Considering its success in building up a marketplace for REF products in Wisconsin and Minnesota, Brava expanded its operations to North Dakota and Iowa.

37.     REF has formally recognized Brava's success as a dealer on multiple occasions, including naming Brava its Distributor of the Year in 2017, 2018, and again in 2021. Attached as **Exhibit C** is an image of the 2021 Distributor of the Year award.

38.      In 2016, Mr. Connolly approached Mr. Marcks seeking assistance with finding a West Coast distributor for REF products. Mr. Marcks introduced Mr. Connolly to Ron Wyse. Mr. Wyse was the owner and operator of Ed Wyse Beauty, a Washington-based beauty-product

distributor. Soon thereafter, REF and Ed Wyse Beauty entered into a distribution agreement. Later Ed Wyse Beauty was bought by Basset Salon Solutions which would expand REF into the California and Arizona markets.

39.     Brava's leadership closely coordinates with REF's leadership. Mr. and Mrs. Marcks personally speak or communicate via email or text with Mr. Connolly and other REF employees on a daily basis. Mr. Marcks also regularly speaks directly to Jan and Edward Ernstberger. Mr. Connolly visits Brava in Wisconsin on a quarterly basis. During these visits, Mr. Marcks and Mr. Connolly discuss Brava's sales and promotional efforts and explore opportunities to further advance the parties' relationship. Both Jan and Edward Ernstberger have flown from Stockholm to Madison to visit Brava and coordinate with Mr. and Mrs. Marcks.

40.     Recognizing Brava's initiative and unparalleled success in developing an education program for REF, in 2021, REF hired Mrs. Marcks to direct its educational activities across North America. In September 2022, REF invited Mrs. Marcks to visit its parent company's facilities in Sweden to design and curate marketing and educational materials that would be distributed throughout REF's North American distribution network. REF subsequently invited Mr. Marcks to visit its Swedish facilities in October 2022, but he had to decline due to Hurricane Ian.

41.     In late-2021, Brava and REF discussed the possibility of Brava being appointed REF's exclusive dealer in Florida. Before agreeing to expand Brava's operations to Florida, Mr. Marcks asked that REF commit to supporting "local" and reaffirm that REF intended to continue distributing exclusively through salons and prohibiting direct-to-consumer sales through chain stores or websites. Edward Ernstberger assured him that Brava and REF were on the "same

page" and that REF would "only support local." Attached as **Exhibit D** is a copy of the December 7, 2021 communications between Mr. Marcks and Edward Ernstberger.

42.     In reliance on that representation and REF's assurance that Brava would enjoy exclusive territory in Florida, Brava began to make significant investments to develop the Florida territory and create synergies in Florida that would advantage its existing markets. Brava bought an approximately $1.5 million facility in Punta Gorda, Florida to serve as the base for Brava's operations within the state. Soon after, Mr. and Mrs. Marcks began renovating the facility for educational classes to be hosted onsite. Brava also invested in securing warehouse space to serve as a distribution center for products that Brava would send from its Wisconsin facilities to Florida for use in educational classes and distribution to salon customers in Florida. To capture the full potential of the extremely competitive Florida market, Brava realized that it would need to develop a local sales management team and went about recruiting a proven sales professional to lead its Florida team.

43.     Brava also reoriented its marketing plans in Wisconsin, Minnesota, Iowa and North Dakota to take advantage of the Florida facility and to grow symbiotically with Brava's Florida business. At the Florida facility, Brava could offer hairstylists across its territory a completely unique REF-focused travel experience in which stylists would attend classes on the facility's lanai overlooking the ocean before partaking in resort-like activities such as kayaking, day-trips to nearby islands, and hair shows on the beach. The purpose of these offerings was to build loyalty among Brava's customer base and develop a greater connection between the hairstylists and REF products. The incentive program with Ella's Salon, referenced above, is an example of how Brava planned to use its Florida facility to integrate its work expanding the

Florida market for REF with efforts to deepen and expand its sales in Minnesota, Wisconsin, Iowa, and North Dakota.

44.     On February 9, 2022, Mr. Connolly emailed REF's listserv of interested Florida-based hairstylists and salons and announced Brava's appointment in the territory. In that communication, Mr. Connolly described Brava as an "outstanding REF partner" who has "set many benchmarks as to how one should care for their salons." He promised that Brava will "not simply sell you your REF products, but also truly want to help your salon grow." REF further praised Brava's ability to provide "great service, outstanding education, and very strong promotions." He further recognized that Brava had "invested in property in Florida and will soon be bringing you amazing education locally while also shipping your orders from a local warehouse." Attached as **Exhibit E** is a copy of the February 9, 2022 email.

45.     Only after Brava purchased the Florida facility and REF announced Brava's appointment as the exclusive Florida distributor to salons did Mr. Connolly inform Mr. Marcks about internal discussions at REF over terminating Brava's Florida territory and appointing SAYN Beauty as REF's exclusive Florida dealer. Such an appointment would necessarily involve terminating Brava's exclusive rights in the Florida territory. However, on March 21, 2022, Mr. Connolly reassured Mr. Marcks that REF had decided to not pursue SAYN Beauty and that Brava would continue to have exclusive rights to distribute REF products in Florida. Attached as **Exhibit F** is a copy of the March 21, 2022 text message communication from Mr. Connolly.

46.     At REF's insistence, Brava attended a trade show in Orlando from June 4 to June 7, 2022. REF represented to Brava that the dealer would sell over $40,000 worth of REF product at the show. Brava protested this requirement because Brava had created a plan for developing

the Florida market and it preferred to follow that plan. Nevertheless, Brava relented and attended the show. In total, Brava spent approximately $10,000 on marketing materials and for travel and lodging of four employees to attend the show. Despite overwhelmingly pressure from REF to attend, the Orlando show turned out to be an abject failure as Brava sold under $2,000 worth of REF products.

### REF TERMINATES BRAVA'S FLORIDA TERRITORY, ALLOWS ONLINE SALES, AND STOPS FILLING BRAVA ORDERS

47.     Just as Brava's Florida efforts were gaining steam after the setback of the Orlando trade show, in late-September 2022, Hurricane Ian paralyzed the state and destroyed Brava's Florida facility. Mr. and Mrs. Marcks, though devastated, immediately set about rebuilding.

48.     Finalizing the hiring of an accomplished sales professional to direct its Florida sales team was one of Brava's primary post-Ian goals. After extensive recruitment efforts and negotiations over salary, commission structure, and relocation terms, Brava was on the verge of finalizing a six-figure employment agreement with an experienced sales executive when on November 21, 2022, Jan Ernstberger informed Mr. Marcks by phone that REF had granted SAYN Beauty exclusive rights to distribute REF products in Florida, effective immediately.

49.     Despite Brava's exceptional performance as a dealer and its significant investment in the Florida market, the dealer would no longer be able to sell REF products in Florida. Brava cut off discussions with the experienced sales executive it had recruited to lead its Florida operations.

50.     On November 29, 2022, Mr. Marcks discovered that discovered that SAYN Beauty had begun offering REF products for sale direct to consumers online through Amazon.com ("Amazon"). This finding was shocking because REF products were prohibited by the manufacturer from being sold on Amazon or through any other online retail outlet. Indeed,

the exclusive availability of REF products in salons has been a significant part of the brand's appeal to salon customers. In compliance with REF's longstanding preferred sales model, to this date, Brava has never sold and remains unable to sell REF products online.

51.     The Amazon sales are being made at below-market prices. Attached as **Exhibit G** is a copy of a search for "REF" run on SAYN Beauty's Amazon storefront revealing that SAYN Beauty offers over 60 REF products for sale on Amazon at reduced rates. The URL for the search                        is:                        https://www.amazon.com/s?k=REF&i=merchant-items&me=AA3S1T6YVTVCZ&qid=1670083764&ref=sr_pg_1   (last   visited   December   5, 2022). By doing so, SAYN Beauty is undercutting both salons and dealers like Brava that have never sold products directly to consumers online. By way of example, on December 5, 2022, Mr. Marcks ordered REF Styling Medium Shine Wax For Extra Hold 85 ml from SAYN Beauty's Amazon store to be delivered to his residence at 510 Veterans Road, Stoughton, Wisconsin 53589. This product is listed at less than what a salon charges for retail sales of the same product. Attached as **Exhibit H** is a copy of the order details.

52.     Upon discovery of SAYN Beauty's Amazon sales, Mr. Marcks immediately sought an explanation from REF for this reversal of longstanding policy and practice. On November 30, 2022, Mr. Connolly confirmed to Mr. Marcks that REF was in fact permitting SAYN Beauty to sell on Amazon. Attached as **Exhibit I** is a copy of the November 30, 2022 email from Mr. Connolly to Mr. Marcks.

53.     Mr. Connolly asserted that Edward Ernstberger was preparing a letter to all distributors explaining REF's momentous decision to begin direct-to-consumer sales on Amazon. A week later, as of the time of filing this Complaint, Brava has not received the promised letter from Edward Ernstberger.

54.     Over the last week, REF has also failed to fulfill Brava's orders for REF products. REF's failure to fill Brava's orders has frustrated Brava's ability to sell REF products across its territory. Unable to provide product to its customers, Brava and its operations are at a virtual standstill. Many of the REF products listed by SAYN Beauty on Amazon are the subject of Brava's unfulfilled purchase orders.

55.     Upon information and belief, REF is offering REF products to SAYN Beauty at a discount.

56.     Upon information and belief, SAYN Beauty is listing REF products on Amazon at below-market prices to encourage customers in Brava's territory to purchase from SAYN Beauty.

57.     Upon information and belief, to meet the increased demand for Amazon orders, REF is prioritizing SAYN Beauty's orders over Brava's orders.

58.     Upon information and belief, SAYN Beauty has sold hundreds of REF products on Amazon to consumers in Wisconsin, Minnesota, Iowa, North Dakota, and Florida.

59.     Upon information and belief, SAYN Beauty has sold REF products directly to Brava customers in Florida.

60.     Upon information and belief, existing Brava customers will seek to return REF products to Brava and demand refunds once they discover that REF products are available to consumers at below-market prices on Amazon through SAYN Beauty.

61.     Permitting direct-to-consumer sales lessens the value of Brava's existing REF inventory and diminishes the brand's mystique. It also reverses longstanding policy, reduces the value of the REF brand to salon customers, and devastates the trust that Brava has painstakingly built with its salon customers and that forms the foundation of its business.

### FIRST CLAIM FOR RELIEF
**Violation of Wisconsin Fair Dealership Law**
**(Substantial Change in Competitive Conditions)**

62.     Brava adopts by reference and incorporates as if set forth herein all of the preceding allegations.

63.     The Wisconsin Fair Dealership Law ("WFDL"), Wis. Stat. ch. 135, is a robust statute extending good cause, notice, and cure protections to Wisconsin-situated "dealerships" in which there is: (1) an express or implied, oral or written agreement between two parties; (2) by which a person is granted the right to sell or distribute the other's goods and services or use its trade symbols; and (3) in which there is the requisite community of interest. *Benson v. City of Madison*, 2017 WI 65, ¶35, 376 Wis. 2d 35, 897 N.W.2d 16.

64.     The business relationship between Brava and REF constitutes a "dealership" within the meaning of the WFDL as REF has granted Brava the right to distribute its products and has substantially associated Brava with REF's trademarks, trade names, and logotypes. *See* Wis. Stat. § 135.02.

65.     Brava is a "dealer" and REF is a "grantor" as those terms are defined in the WFDL. *See* Wis. Stat. § 135.02.

66.     Brava's dealership is "situated in" Wisconsin.

67.     A "community of interest" exists between Brava and REF as that term is used in the WFDL and interpreted in case law.

68.     As part of the dealership, REF granted Brava the exclusive rights to sell REF products in Wisconsin, Minnesota, Iowa, North Dakota, and Florida.

69.     The Seventh Circuit has "distilled the principles underlying [] Wisconsin cases" in providing that a community of interest may exist: (1) when "a large proportion of an alleged

dealer's revenues are derived from the dealership;" or (2) when the "alleged dealer has made sizable investments (in, for example, fixed assets, inventory, advertising, training) specialized in some way to the grantor's goods or services, and hence not fully recoverable upon termination." *Frieburg Farm Equip., Inc. v. Van Dale, Inc*., 978 F.2d 395, 399 (7th Cir. 1992).

70. Brava draws nearly 95% of its revenue from its sales of REF products and has made significant capital investments to aid in the sale and distribution of REF products, including, increasing its workforce by 333%, purchasing a $550,000 facility in Wisconsin, purchasing a $1.5 million facility in Florida, and building its robust REF-centered educational program.

71. The WFDL prohibits REF from terminating, cancelling, failing to renew, and/or substantially changing the competitive circumstances of Brava's dealership without "good cause," proper notice, and an opportunity to cure. *See* Wis. Stat. § 135.03-.04.

72. REF did not meet any of those prerequisites here.

73. "Good cause" exists only if Brava failed to "comply substantially with essential and reasonable requirements" that are not discriminatory as compared to the requirements imposed on other similarly situated dealers or acted in "[b]ad faith ... in carrying out the terms of the dealership." Wis. Stat. § 135.02(4)(a), (b).

74. REF substantially changed Brava's competitive conditions by:

(a) stripping Brava of its exclusive rights to distribution rights in Florida and appointing a rival distributor, SAYN Beauty, as REF's exclusive Florida dealer;

(b) authorizing SAYN Beauty to sell REF products on Amazon to, among others, consumers in Brava's territory; and

(c) prioritizing orders from SAYN Beauty while failing to fulfill Brava orders.

17

75.     Individually, each of these actions is a substantial change to Brava's competitive circumstances that has fundamentally altered and significantly depressed Brava's ability to sell REF products in its territory.

76.     REF did not have good cause to substantially change Brava's competitive conditions as Brava always acted in good faith while complying with—and exceeding—all of REF's essential, reasonable, and nondiscriminatory requirements.

77.     Proper notice under the WFDL must: (1) explain the nature of the grantor's action, (2) provide a 90-day notice period, (3) detail the grounds for termination, and (4) provide the dealer an opportunity to cure. Wis. Stat. § 135.04.

78.     REF's failure to issue **_any_** notice to Brava alerting the dealer to the introduction of Amazon sales is a violation of WFDL's notice and cure protections, distinct from REF's failure to comply with the good-cause requirement. *See Designs in Med., Inc. v. Xomed, Inc.*, 522 F. Supp. 1054, 1057 (E.D. Wis. 1981).

79.     Because the WFDL applies and has been violated, REF must be enjoined from substantially changing Brava's competitive conditions. *See* Wis. Stat. § 135.065. The substantial changes REF have unilaterally imposed are causing irreparable damage to Brava that cannot be adequately remedied at law.

80.     Brava is also entitled to its actual costs in this action, including reasonable actual attorneys' fees. *See* Wis. Stat. § 135.06.

### SECOND CLAIM FOR RELIEF
*Violation of Wisconsin Fair Dealership Law*
**(*De Facto Termination*)**

81.     Brava adopts by reference and incorporates as if set forth herein all of the preceding allegations.

18

82. The WFDL explicitly recognizes the superior economic and bargaining power of grantors and seeks to protect dealers against unfair treatment. *See* Wis. Stat. § 135.025(2)(b). As a consequence, the statute requires that grantors must treat all similarly situated dealers in a nondiscriminatory matter. Wis. Stat. § 135.03. REF has violated this prohibition by granting SAYN Beauty unique privileges that have frustrated Brava's ability to sell REF products in its exclusive territory.

83. On November 21, 2022, REF, without good cause or proper notice, appointed SAYN Beauty as its exclusive Florida dealer and unilaterally terminated Brava's ability to distribute REF products within the territory.

84. REF has since granted SAYN Beauty—and no other distributor—the right to distribute REF products online through Amazon.

85. Upon information and belief, REF is prioritizing SAYN Beauty's orders while failing to fulfill Brava's orders.

86. SAYN Beauty now sells REF products at below-market prices in Brava's territory.

87. Brava cannot continue to function as a dealer if it is unable to receive REF products while REF allows SAYN Beauty to flood Brava's territory with the same products, especially if REF is assisting SAYN Beauty in selling those products at a lower price.

88. Brava has been terminated *de facto* on account of REF's discriminatory treatment, and the dealer has suffered, and continues to suffer, damages on account of REF's blatant violation of the WFDL.

89. Because the WFDL applies and has been violated, REF must be enjoined from terminating Brava's dealership in Florida, from allowing SAYN Beauty to sell REF products

online, and from prioritizing SAYN Beauty purchase orders. REF's *de facto* termination of Brava's ability to sell across its territory causes irreparable damage that cannot be adequately remedied at law. *See* Wis. Stat. § 135.065.

90.　　Brava is also entitled to its actual costs in this action, including reasonable actual attorneys' fees. *See* Wis. Stat. § 135.06.

### ***THIRD CLAIM FOR RELIEF***
***Breach of Contract***

91.　　Brava adopts by reference and incorporates as if set forth herein all of the preceding allegations.

92.　　For valuable consideration, Brava and REF entered into the Agreement (as amended) by the terms of which Brava would purchase and distribute REF products throughout Wisconsin and Minnesota (and later Iowa, North Dakota, and Florida).

93.　　Brava has performed all relevant duties and obligations under the Agreement and is not in breach of any of its obligations to REF.

94.　　REF has breached the Agreement by refusing to fulfill Brava's orders, by terminating the dealer's ability to sell REF products in its territory, and by violating the promise of exclusivity by allowing a competing distributor to sell on Amazon. REF's conduct has destroyed the essential object of the parties' Agreement and deprived Brava of the benefit it expected when it agreed to be REF's exclusive dealer.

95.　　REF's wrongful conduct constitutes a material breach as defined in Section 9.1 of the parties' Agreement.

96.　　REF has not been excused from any of its duties and obligations and its failure to meet its obligations under the Agreement is indefensible.

97.     Brava has suffered, and continues to suffer, harm as a direct and proximate cause of REF's breaches.

### FOURTH CLAIM FOR RELIEF
### *Fraudulent Misrepresentation*

98.     Brava adopts by reference and incorporates as if set forth herein all of the preceding allegations.

99.     REF made representations of fact to Brava including, but not limited to, promising Brava that REF would not permit online or direct-to-consumer sales of its products and that Brava would be REF's exclusive dealer in Florida.

100.    Brava relied upon these representations and decided to invest significantly in increasing its ability to distribute REF products, including by purchasing a $1.5 million facility in Florida.

101.    REF's representations were false: after encouraging Brava to make significant investments to promote and distribute REF products, REF has done an about-face and is now permitting direct-to-consumer sales of its products and has also terminated Brava's ability to distribute in Florida.

102.    REF's false representations were malicious and in an intentional disregard of Brava's rights.

103.    Brava has been significantly harmed by its reliance on REF's representations, and Brava is entitled to recover from REF actual damages, all costs and attorney's fees incurred, and punitive damages.

WHEREFORE, Plaintiff Brava Salon Specialists, LLC, demands judgment against Defendant Swedish Haircare, Inc. as follows:

a. Entry of an injunction prohibiting REF from allowing SAYN Beauty to sell REF products online;

b. Entry of an injunction preserving the status quo in Brava's territory for REF sales, including restoring Brava's position as the REF's exclusive Florida dealer, and ordering REF to continue to fulfill Brava's orders on a nondiscriminatory basis;

c. Compensatory damages in an amount to be determined at trial;

d. Liquidated damages as required by the parties' Agreement;

e. Punitive damages in an amount to be determined at trial;

f. All costs and attorneys' fees permitted by law; and

g. Any other relief this Court deems just and equitable.

PLAINTIFF HEREBY DEMANDS A JURY TRIAL OF 12 PERSONS

Dated: December 30, 2022

STAFFORD ROSENBAUM LLP
By   /s/ Jeffrey A. Mandell
Jeffrey A. Mandell, SBN 1100406
Rachel E. Snyder, SBN 1090427
Isaac S. Brodkey, SBN 1124492
222 West Washington Avenue,
Suite 900
Madison, Wisconsin 53701-1784
Email: jmandell@staffordlaw.com
       rsnyder@staffordlaw.com
       ibrodkey@staffordlaw.com
608.256.0226
*Attorneys for Plaintiff Brava Salon Specialists, LLC*