IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

BRAVA SALON SPECIALISTS, LLC,

    Plaintiff,                                                                    OPINION AND ORDER

    v.                                                                                                22-cv-695-wmc

SWEDISH HAIRCARE, INC., d/b/a REF,

    Defendant.
_____

    On December 6, 2022, plaintiff Brava Salon Specialists, LLC ("Brava") filed this lawsuit against defendant Swedish Haircare, Inc., d/b/a REF ("REF"), claiming violations of the Wisconsin Fair Dealership Law, Wis. Stat. Ch. 135 ("WFDL"), as well as breach of contract and fraudulent misrepresentation. At the same time, Brava moved for a temporary restraining order and preliminary injunction based on its WFDL claim. (Dkt. #2.) After being assured that defendant had been served on December 8, and been notified of the scheduled telephonic hearing the following afternoon, December 9, 2022, the court took up Brava's motion for a TRO. The court granted that motion in part and set a hearing on Brava's PI motion for January 9, 2023, after giving REF the opportunity to respond in writing. (Dkt. #13.) At defendant's request for a short postponement and to conduct the hearing via videoconference, the court granted both and held the PI hearing on January 12, 2023, at which representatives and counsel for both parties appeared. Finding a likelihood of success on Brava's WFDL claims and acknowledging the statutory presumption of irreparable harm, the court also granted its PI motion in part and denied it in part.

1

BACKGROUND[1]

Defendant REF is a Massachusetts corporation and the United States affiliate of the Swedish Haircare business, which manufactures haircare products, including shampoos, conditioners and styling creams. Jim and Jesse Marcks are Wisconsin residents and sole members of Brava, a Wisconsin limited liability company that distributes wholesale beauty products, including REF products. In 2015, Jim Marcks met REF executive Paul Connolly at a trade show. Connolly explained that while Swedish Haircare products were successful in Europe, REF was struggling to break into the United States market for those products through its current distributors. REF used distributors rather than sell online to salons and professionals or direct-to-consumers. After testing the products, the Marcks' agreed to carry REF products through Brava, which entered into a written distributor agreement with REF on March 1, 2015.

The Agreement authorized Brava's use of REF's trademarks and granted Brava the exclusive right to purchase and distribute REF products in Wisconsin and Minnesota, as well as a right of first refusal for sales of REF products in states neighboring Wisconsin and Minnesota. While the Agreement originally had a five-year term, it was formally amended in 2017 and again in 2019 to extend the Agreement, which now runs until May 2029.

Since 2015, Brava has worked to increase its sales of REF products in the territory, which now makes up a significant portion of Brava's overall sales. At some point after 2015, Brava also exercised its right to become the exclusive REF dealer in North Dakota

---

[1] The following summary is derived from defendant's response to plaintiff's proposed findings of fact. (Dkt. #21.) While no facts have been established yet, the court focuses on the parties' undisputed statements of fact for the purposes of deciding the motion for preliminary injunction.

and Iowa. Brava was further named REF's Distributor of the Year in 2017, 2019, and 2021, and Jesse Marcks was hired to direct REF's educational activities across North America.

In late 2021, REF and Brava also discussed the possibility of Brava taking on the distribution of products in Florida, as REF was looking to choose a distributor for that state. Apparently in reliance on these discussions, Brava purchased a building in Florida for use in distributing there, although the parties dispute the exact nature of the building and its suitability for that use. While REF was considering other salons to be its Florida distributors, including SAYN Beauty, Brava also began planning its sales strategy for the Florida market.

On February 9, 2022, Connolly emailed REF's listserv to announce that Brava would be the new Florida distributor for REF products; he also reassured Jim Marcks on March 21, 2022, that Brava would continue to have exclusive distributorship rights in that territory. Throughout the summer, therefore, Brava made various investments in its sales infrastructure in Florida. On November 21, 2022, however, the founder of REF, Jan Ernstberger, informed Jim Marcks that SAYN Beauty would instead have the exclusive right to distribute REF products in Florida, effective immediately.

Less than two weeks later, the Marcks' not only discovered that REF had named SAYN Beauty as its exclusive distributor in Florida, but worse, SAYN was offering REF products online through Amazon.com, despite REF never before allowing any online sales of its products. Shortly after, REF confirmed that it had decided to allow online sales due to the number of unauthorized resellers of REF products already online, as well as a

changing sales environment. The products SAYN Beauty began selling online with REF's permission were even made available for purchase by consumers within Brava's existing exclusive territory. Finally, Brava alleges that REF is prioritizing fulfillment of SAYN Beauty's orders over Brava's, something REF disputes.

PROCEDURAL POSTURE

As noted above, this dispute first came before the court on plaintiff Brava's motion for an immediate temporary restraining order pending a hearing and ruling on its motion for preliminary injunction. (Dkt. #2.) Under Federal Rules of Civil Procedure 65(b), a TRO may be issued without notice to the adverse party if "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). Having been provided with the appropriate supporting materials, the court held a telephonic hearing on plaintiff's TRO motion on December 9, 2022, at which defendant was invited but did not participate. At the completion of that hearing, the court was satisfied that since 2015, Brava had credibly shown it invested substantial time, effort and money into promoting REF products within its territory as defined by the parties' Agreement, including Wisconsin, Minnesota, Iowa and North Dakota. Further, the court agreed that Brava had credibly shown it was granted an exclusive right to sell REF products to retailers or customers within that territory, both as written in ¶ 2.3 of the Agreement and as confirmed in practice.

As such, the court found it likely that REF's stated intention to authorize without notice or showing of good cause a substantial change in Brava's competitive circumstances

4

through the introduction of online sales of REF Swedish Haircare products into its exclusive territory would violate the Wisconsin Fair Dealership Law. Finally, the court agreed with Brava that proof of irreparable injury had been sufficiently established both by the evidence provided and the presumption of such injury set forth at Wis. Stat. § 135.065.

Where this court drew the line at the TRO stage was with plaintiff Brava's request to extend any injunction under the WFDL to an allegedly, newly awarded territory in the State of Florida. First, the court found that territory fell outside the terms of the parties' existing distributor agreement, which defined the territory to include:

>  (1) state of Wisconsin
>  (2) state of Minnesota
>  (3) the right to first refusal in other neighbor states in U.S.A where REF for the time being has no Distributor.

(Dkt. #4-1, p 9.) As a result, while finding that the parties' longer-standing, integrated agreement encompassed the later-added, neighboring states of Iowa and North Dakota, the court was unwilling to read into it a non-contiguous state territory in Florida without more substantial proof of the parties' "meeting of the minds" on that issue. Second, because the relationship in Florida began at its earliest in late 2021, and any investment in that territory by the plaintiff did not occur until early 2022, the court was unpersuaded that Brava had sufficiently established a "community of interest" with REF in Florida sufficient to bring it under the WFDL's protection. Third, the court expressed concern with respect to the reach of the WFDL to this merely arguable, newly established dealership agreement with a territory located wholly outside the State of Wisconsin, at least on the

evidence presented to date.[2] *See Generae Corp. v. Caterpillar, Inc.*, 172 F.3d 971, 976 (7th Cir. 1999) ("a dealer seeking relief under the WFDL cannot recover damages for lost sales arising out of the terminating of out-of-state dealerships"); *Baldewein Co. v. Tri-Clover, Inc.*, 3000 WI 20 ¶ 24 n.6, 233 Wis.2d 57, 606 N.W.2d 145 (recognizing that "any 'extraterritorial application of the WFDL would, at the very least, raise significant questions under the Commerce Clause'").

Consistent with these rulings, the court entered a TRO on December 9, 2022, as follows:

1) Defendant Swedish Haircare, Inc. d/b/a REF must immediately refer all orders for REF products originating from or seeking shipment to Wisconsin, Minnesota, Iowa and North Dakota to Brava as its exclusive distributor of REF products in that territory;
2) REF must IMMEDIATELY instruct SAYN Beauty and all other distributors of REF products in the United States to remove all product listings offering REF products direct-to-consumer from Amazon.com or any other website;
3) REF must fulfill Brava's purchase orders on an equal, non-discriminatory basis with all other distributors;
4) The court will hold an evidentiary hearing on plaintiff's motion for preliminary injunction at 9:00 a.m. on Monday, January 9, 2023.
5) Defendant may have until noon C.S.T. on Friday, December 30, 2022, to file any written response to plaintiff's motion for preliminary injunction consistent with local procedure; and

---

[2] As the court indicated, this was not to conclude that Brava would not have substantial contractual or quasi-contractual rights as a result of actions taken in reliance on its claimed appointment to a new, exclusive territory in Florida, nor that other contractual rights might not be available to Brava regarding its conduct in the territories expressly covered by the parties' existing Agreement. Rather, the court held that without a greater showing, there appeared no likelihood of Brava prevailing on a claim under the WFDL, nor as a result, of benefiting from the presumptions of irreparable harm under that statute if prevented from proceeding with an exclusive right to sell REF products in the state of Florida.

> 6) Plaintiff's counsel is to ensure service of this order on defendant and any known counsel as soon as possible orally, electronically and by paper.

(Dkt. #13.)

After permitting briefing and responses to Brava's proposed findings of fact by REF (dkt. #21), as well as a supporting affidavit from REF's Secretary Paul Connelly (dkt. #31), the court proceeded to hold an evidentiary hearing on the plaintiff's motion for preliminary injunction on Friday, January 13, 2023. Following an opportunity for additional, supplemental briefing by both sides on an agreed upon, expedited schedule during the week of January 16 (dkt. ## 37, 40), the court ruled as follows.

## OPINION

At the outset of the January 13 hearing, counsel for REF agreed during oral argument to entry of a preliminary injunction that would continue to require it to "refer all orders for REF products originating from or seeking shipment to Wisconsin, Minnesota, Iowa and North Dakota to Brava as its exclusive distributor of REF products in that territory." As a result, the principal dispute revolved around the ability of REF, its other distributors and other third parties, to offer REF products online, particularly through Amazon.com, during the remainder of this lawsuit. Even with respect to that issue, however, REF's counsel ultimately agreed that subject to modification, the existing prohibition on online sales of products into Brava's existing territory of Wisconsin, Minnesota, Iowa and North Dakota should be continued, with the understanding that REF had no control over bootleg sales on Amazon that may be conducted through independent sellers obtaining REF products in the secondary market.

### A. Scope of Territory Likely Protected under the WFDL

While plaintiff continues to argue that any relief granted in the preliminary injunction that affects Brava's upper Midwest dealer territory, should also apply to sales in the State of Florida, plaintiff offered no additional evidence in support at the preliminary injunction hearing stage, nor was the court persuaded by counsel's legal arguments to that effect. Obviously, on a full record, perhaps plaintiff can make such a case, but not on this record.

Instead, following oral argument, plaintiff offers citations to Judge Stadtmuller's decision in *Keen Edge Co., Inc. v. Wright Mnfg., Inc.*, 2020 WL 4926664 (E.D. Wis.), for the proposition that the WFDL applies to all its assigned territory, including Florida. Unfortunately for plaintiff, *Keen Edge* held no such thing. First, as defendant points out, that court found the territory protected by the WFDL did *not* extend beyond the State of Wisconsin, despite the plaintiff's entire sale territory covering at least parts of some seven states. Instead, the court held that Keen Edge's dealership in these other state territories were protected by dealership and franchise laws in those other states. Indeed, that is why the *Keen Edge* court expressly extended protection and injunctive relief for so much of Keen Edge's territory in northern Illinois, northwest Indiana, most of Missouri and all of Minnesota and North Dakota, but not Kansas where no comparable state law existed (or at least was not cited to the court by plaintiff). Thus, even if the recently "awarded" Florida territory otherwise satisfied the requirements for a dealership under the WFDL, it is not

8

subject to relief at the preliminary injunction stage unless plaintiff can refer the court to a Florida dealer/franchise statute comparable to the WFDL.

Of course, for reasons explained during oral argument (unlike its exclusive, upper Midwest territories, which defendant has not to date disputed the existence of a dealership or a community of interest), even if this court were to find ultimately that an exclusive distributor agreement existed during part of 2022, a substantial doubt also exists as to whether a "community of interest" had been formed between the parties in any Florida territory, given its recency and lack of any proven development by Brava in that newly assigned territory beyond the recent purchase of a warehouse to maintain inventory once the dealership is up and running. As a result, just as in *Keen Edge*, this evidence falls well short of establishing a likely statutorily protected dealer relationship between the parties in Florida.

### B. Authorizing Online Sales Outside Protected Territory

Having addressed the scope of the protected territory, this just leaves the other disputed provision in the court's TRO: directing REF to "IMMEDIATELY instruct SAYN Beauty and all other distributors of REF products in the United States to remove all product listings offering REF products direct-to-consumer from Amazon.com and any other website." (Dkt. #11, ¶ 2.) Based on the court's rulings to date, defendant REF argues this prohibition is too broad to the extent it places a prohibition on its or its authorized distributors from offering online sales in states outside Brava's existing four state territory.

Plaintiff's argument from the outset is that by REF actively moving sales of *any* of its haircare products to the internet would has "substantially change the competitive circumstances" of its protected dealership without adequate notice and opportunity to cure in violation of the WFDL, Wis. Stat. §§ 135.03-.04. The court is in agreement if that change were made without 90 days notice *and* resulted in intrabrand competition by other authorized distributors or dealers within plaintiff's protected territory, which is exactly what plaintiff claims happened here. Accordingly, the court agrees that Brava has shown a substantial likelihood of success under the WFDL on its claim that defendant failed to provide adequate notice or show good cause for altering Brava's exclusive right to sell REF products within its defined territory.[3]

This leaves Brava's last argument: that the WFDL covers all offers of sales on the internet, even if offered by someone outside its direct control or sold within its territory. The theory behind this argument seems to be that by assigning Brava exclusive territory in which to sell, REF also guaranteed no online sales would be offered by anyone anywhere (or at least in the U.S.). Whatever strength that argument might have in the common law, Brava has neither offered proof of such an understanding between these parties, nor more importantly for purposes of its preliminary injunction motion, proof that its protected dealership rights extend beyond its own territory under the WFDL or that allowing internet sales outside Brava's exclusive territory "substantially changes the competitive

---

[3] To the extent that REF is now claiming a right to universally change its method of going to market by online sales, it has yet to prove that this change is "essential, reasonable and nondiscriminatory." *Ziegler Co., Inc. v. Rexnord*, __ WL __, 147 Wis.2d 308, 317, 433 N.W.2d 8 (1988)(citing Wis. Stat. § 135.24(4)(a). Regardless, *REF* has yet to provide adequate notice as required by Wis. Stat. § 155.04.

10

circumstances of [its] dealership agreement." *See Remus v. Amoco Oil Co.*, 794 F.2d 1238 (7th Cir. 1986) (WFDL does not prevent grantor "from instituting nondiscriminatory system-side changes" that most distributors support"); *East Bay Running Store, Inc. v. MIKE, Inc.*, 890 F.2d 996, 1000 (7th Cir. 1989) (prohibition on sales by mail or telephone not a "substantial change in competitive circumstances of dealership agreement" under WFDL if applied to all dealers on "a non-discriminatory system-wide" basis).

Consistent with the opinion above, as well as the reasons set forth on the record at the hearings on December 9, 2022, and January 13, 2023, therefore,

ORDER

IT IS ORDERED that pending final adjudication of the issues in this case, plaintiff's motion for a preliminary injunction (dkt. #2) is GRANTED IN PART AND DENIED IN PART as follows:

1. Defendant Swedish Haircare Inc., d/b/a REF, must continue to refer all orders for REF products originating from or seeking shipment to Wisconsin, Minnesota, Iowa and North Dakota to Brava as its exclusive distributor of products in that territory.
2. REF must make all reasonable efforts to ensure that its authorized distributors and retailers of REF products in the United States of America discontinue the sale of all REF products online into the states of Wisconsin, Minnesota, Iowa and North Dakota, whether on Amazon.com or any other website.
3. REF must fulfill Brava's purchase orders on an equal, non-discriminatory basis with all other distributors.

Entered this 7th day of February, 2023.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge

11