IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

BRAVA SALON SPECIALISTS, LLC,

    Plaintiff,                                    OPINION AND ORDER

    v.                                          22-cv-695-wmc

REF NORTH AMERICA, INC.[1],

    Defendant.
_____

    In February 2023, this court entered an order granting in part plaintiff Brava Salon Specialists, LLC's motion for a preliminary injunction against defendant REF North America, Inc. In particular, that order required defendant to take certain steps to protect plaintiff's position as the exclusive distributor of REF haircare products in Wisconsin, Minnesota, Iowa and North Dakota. (Dkt. #41.) Defendant has now filed a motion for an amendment to the preliminary injunction order that would permit it to contract with Amazon and sell its products into plaintiff's exclusive territory. (Dkt. #48). While conceding that such an amendment implicates the Wisconsin's Fair Dealership Law, Wis. Ch. 135 ("WFDL"), as it would significantly modify the parties' apparent, current distributorship agreement, defendant does not even purport to have followed the statutory notice requirements for such a modification. Nor does the defendant appear to have yet met the WFDL's requirement for the showing of "good cause" for this proposed modification. Accordingly, the court must deny defendant's motion.

---

[1] The caption has been updated to reflect defendant's corporate name change from Swedish Haircare, Inc. to REF North America, Inc. (Dkt. #49, at 1.)

Also before the court is plaintiff's motion to amend its complaint to add REF International AB as a defendant and expand its claims for violations under the WFDL. (Dkt. #59.) That motion will be granted.

Finally, the parties have filed a motion to strike the remaining schedule in this case, on the grounds that the court's decision on the pending motions will have a "material effect on the progression of the litigation, including discovery." (Dkt. #68.) The parties do not explain what this means, however, and the court is not persuaded that it is necessary to strike the entire schedule when there are still more than two months until the close of discovery and the dispositive motions deadline. The court's trial calendar is currently booked until the spring of 2025, so the court is not inclined to remove this case from the calendar without sufficient justification. That said, if the parties need a reasonable extension of discovery or the dispositive motions deadline, they make seek relief from the court.

BACKGROUND

Plaintiff filed this lawsuit against defendant in December 2022, seeking injunctive relief and damages based on allegations that defendant wrongfully terminated plaintiff's rights to distribute REF haircare products in Florida, implemented online direct-to-consumer sales, and failed to fulfill its purchase orders. The court initially granted a temporary restraining order against defendant (dkt. #13), then after holding a hearing on plaintiff's motion for preliminary injunction in January 2023, the court issued a written opinion on February 7, 2023, granting the motion in part. (Dkt. #41.) The court found

plaintiff had a substantial likelihood of proving that: it was granted an exclusive right to sell REF products to retailers or customers within Wisconsin, Minnesota, Iowa and North Dakota; and it had invested substantial time, effort and money into promoting REF products in that territory. The court further found that defendant's introduction of direct online sales of REF Haircare products into plaintiff's exclusive territory would effect a substantial change in plaintiff's competitive circumstances without proper notice in violation of the WFDL. Finally, the court concluded that plaintiff had a substantial likelihood of irreparable injury, both with direct evidence of the financial impact on its business and with the benefit of a presumption of such injury under the WFDL, Wis. Stat. § 135.065. As a consequence, the court entered a preliminary injunction requiring defendant: (1) to continue to refer to plaintiff all orders for REF products originating from or seeking shipment to plaintiff's exclusive territory; (2) to make all reasonable efforts to ensure that its authorized distributors and retailers of REF products in the United States discontinue the sale of all REF products online into that territory, whether on Amazon.com or any other website; and (3) to fulfill plaintiff's purchase orders on an equal, non-discriminatory basis with all other distributors.

Following the entry of the injunction order, defendant's parent company and the manufacturer of REF products, REF International AB, attempted to negotiate a contract with Amazon that would exclude shipment of REF products to Wisconsin, Minnesota, Iowa and North Dakota. According to defendant, Amazon responded that Amazon does not restrict purchasers geographically. Thus, if REF products were sold on Amazon, Amazon would ship REF products into those four states. In addition, Amazon informed

3

REF International AB that it would not remove the current sellers of REF products from its website, even if they were unauthorized by REF International AB to sell REF products, *unless* REF International AB had a contract with Amazon that established it as a "registered brand."[2]

In anticipation of selling direct on Amazon, defendant sent a letter to some of its United States distributors (but *not* including plaintiff), stating that it was considering opening a storefront on Amazon "to protect the REF brand and the integrity of salon-based sales." (Dkt. #58-5.) The letter further stated that a storefront on Amazon would sell only retail sized products, and only "at or slightly above the consumer suggested retail price," and would eliminate unauthorized resellers who were undercutting salon-based sales. (*Id.*) Twelve of defendant's 15 current U.S.-based distributors signed the letter expressing support for an REF storefront on Amazon. As noted, despite plaintiff being one of its leading distributors, defendant chose not to send the letter to plaintiff; nor has defendant attempted to communicate with plaintiff about a suitable framework for a contract with Amazon.

According to defendant, it has been unable to determine how many unauthorized sellers are currently selling REF products on Amazon. Defendant states that it has purchased more than $1,000 in REF products on Amazon, and that most of the products are being shipped from home addresses or what appear to be empty buildings. Defendant

---

[2] Plaintiff points out that defendant fails to cite any non-hearsay evidence to support its allegations regarding Amazon's terms and conditions, such as a draft contract, prospectus, outline of terms, or even an email exchange with Amazon. Plaintiff is correct. However, even accepting defendant's assertions regarding Amazon's requirements for restricting unauthorized sales, the court denies defendant's request for relief for reasons explained below.

4

also cites a handful of public comments and reviews on Amazon by customers who purportedly purchased REF products, complaining that the products received were fake, unsafe or old. Defendant has no way to prove whether such negative reviews are real, and concedes that the majority of reviewers on Amazon have left five-star reviews of its products.

OPINION

**I. Defendant's Motion to Amend the Preliminary Injunction Order**

The court may modify a preliminary injunction order "if persuaded that change had benefits for the parties and the public interest." *CFTC v. Battoo*, 790 F.3d 748, 751 (7th Cir. 2015.) Here, defendant requests that the court amend the preliminary injunction order to read as follows:

> (1) Defendant will be allowed to sell its products via Amazon.com ("Amazon sales") into Wisconsin, Minnesota, Iowa and North Dakota ("the territories"), subject to the following:
>
> > a. Defendant will provide a monthly summary of Amazon sales shipped to buyers in the territories, and will pay to plaintiff that dollar amount that plaintiff would have received for each unit of product had it been sold by plaintiff to a salon located within the territories … shown on an attached schedule, Schedule A (dkt. #48-1) [; and]
> >
> > b. Defendant will not be allowed to list REF products on Amazon for a price that is less than the Manufacturers Suggested Retail Pricing shown on Schedule A.
>
> (2) With the exception of Amazon sales, defendant must continue to refer all orders for REF products originating from or seeking shipment to the territories, to plaintiff as its exclusive distributor of products for the territories.
>
> (3) With the exception of Amazon sales, defendant must make all reasonable efforts to ensure that its authorized distributors and retailers of REF products in the

> United States of America discontinue the sale of all REF products on online into the territories whether on Amazon.com or any other website.
>
> (4) REF must fulfill Brava's purchase orders on an equal, non-discriminatory basis with all other distributors.

Defendant argues that its proposed modification would benefit the parties and public interest by ensuring that the REF products sold to the public are authentic and sold at prices that protect salons and distributors from being undercut by unauthorized sellers. Under the current circumstances, defendant says that it cannot control how its product is being sold on Amazon, and that it faces damage to its relationships, reputation and public confidence due to the "chaos" of online sales. Plaintiff objects to defendant's proposed amendment, arguing that permitting defendant to sell on Amazon would amount to a substantial change in the parties' distributorship agreement, and that defendant has failed to satisfy the requirements of the WFDL.

The court agrees with plaintiff. As the court explained repeatedly to defendant at the preliminary injunction hearing, the WFDL requires manufacturers and distributors like defendant to provide notice to dealers before making unilateral changes to the fundamentals of a grantor-distributor business relationship. (Dkt. #39, at 4, 6, 10); *see also* Wis. Stat. §§ 135.03, 135.04 (grantor must provide 90 days' prior written notice and 60 days in which to rectify any claimed deficiency before taking action to modify dealership agreement). Prior to the preliminary injunction hearing, defendant had failed to follow these notice requirements with respect to plaintiff before authorizing some of its distributors to sell online. (Dkt. #39, at 4, 10 (court explaining that defendant "hasn't gone about it the right way under the Wisconsin Fair Dealership Law," and that a "proper

6

plan" needed to be implemented, "including notice requirements to Brava and other distributors").) Now, defendant is once again attempting to make a significant change to its relationship with plaintiff by filing a motion to modify the preliminary injunction order, rather than following the notice requirements of the WFDL. Indeed, plaintiff had no notice of defendant's proposed modification until defendant filed its motion. In short, defendant's motion is procedurally improper.

Even if defendant had satisfied the necessary notice requirements of the WFDL, it has failed to show that its proposed modification would satisfy the substantive requirements of the law. Of course, the WFDL is not "intended to impose an eternal and unqualified duty of self-sacrifice upon every grantor that enters into a distributorship-dealership agreement." *Ziegler Co. v. Rexnord, Inc.*, 147 Wis. 2d 308, 314, 433 N.W.2d 8 (1988). However, the WFDL permits modifications to grantor-distributor relationships only for "good cause." Wis. Stat. § 135.03. This means that the *grantor* must demonstrate: (1) an objectively ascertainable need for change, (2) a proportionate response to that need, and (3) a nondiscriminatory action. *Morley-Murphy Co. v. Zenith Elecs. Corp.*, 142 F.3d 373, 378 (7th Cir. 1998). Although defendant argues that a storefront with Amazon is essential to protect its brand and business, defendant has submitted little by way of actual evidence to support its assertions. Indeed, it offers minimal evidence regarding: (1) specific, anecdotal financial or reputational harm it may have suffered from a few, unauthorized online sales of REF products; (2) steps it has taken so far to address unauthorized online sales; or (3) how contracting with Amazon would resolve the unauthorized sale or products and outweigh the potential damage to REF as a luxury brand. Absent some meaningful

7

showing of actual, material harm to its sales, profitability or long-term economic health, defendant has made little effort to show either "an objectively ascertainable need for change" or "a proportionate response to that need." *Id*. Therefore, its requested modification of the preliminary injunction order will be denied.

## II. Plaintiff's Motion to Amend the Complaint

Plaintiff moves to amend the complaint to add (1) REF International AB as a defendant; and (2) additional WFDL and contract claims based on defendant's recent modifications to the parties' distributorship relationship. Defendant opposes the motion, but the court concludes that the motion should be granted.

### A. REF International AB

First, plaintiff alleges that defendant REF North America and its parent company, REF International AB, located in Sweden, are so intertwined that they are essentially the same company, and that REF International AB is also responsible for the contract and WFDL violations at issue in this case.[3] Defendant objects on the grounds that plaintiff has failed to show that REF International AB is subject to personal jurisdiction in Wisconsin, or that plaintiff has any direct relationship or interaction with the Swedish company. However, defendant's objections are unpersuasive. Plaintiff alleges that the two entities have the same owners and corporate officers and blur the lines between their

---

[3] Plaintiff also makes several, discovery-related arguments concerning the two entities, but having filed no motions to obtain discovery relief, the court will not address those arguments here.

businesses and functions, making any distinction between the companies without a legal difference.  For example, defendant itself stated that in attempting to secure a contract with Amazon, Jan Ernstberger, who is a corporate officer for both companies, is negotiating with Amazon on behalf of REF International AB, not just REF. (Dkt. #49, at 1–2.)  For that reason, REF International AB joined defendant REF's motion to modify the preliminary injunction, conceding that it was enjoined by this court's preliminary injunction order. (Dkt. #48.)

Plaintiff also alleges that it has been unclear which company is making decisions and communicating with plaintiff about their distributorship agreement.  For example, when plaintiff was communicating with defendant regarding a potential expansion into Florida, plaintiff received emails from "Swedish Haircare" employees, as well as an REF International AB employee. (Dkt. #31-1 and Dkt. #35-5.)  All employees also sent emails from addresses at the same domain -- "refstockholm.com."  Based on these significant overlaps between the companies and their officers, plaintiff's allegations are sufficient to state claims against REF International AB for pleading purposes, or more accurately, prevent the court from finding the amendment to add REF International would be futile under Fed. R. Civ. P. 15(a)(2).  *See Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (district courts may deny leave to amend where the amendment would be futile).

Likewise, the evidence in the record is sufficient to support a finding that REF International AB is subject to personal jurisdiction here.  A federal court can exercise personal jurisdiction over a nonresident defendant when the person or corporation would be amenable to suit under the laws of the state in which the federal court sits, subject to

the constitutional due process restraints of the minimum contacts test. *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 723 (7th Cir. 2013). In Wisconsin, "so long as jurisdiction over both plaintiff and defendant satisfies constitutional due process under the minimum contacts test, each party is presumed to fall within Wisconsin's long-arm statute." *Menard, Inc. v. Textron Aviation, Inc.*, No. 18-cv-844-wmc, 2019 WL 11637219, at *5 (W.D. Wis. Oct. 24, 2019) (citing *Felland v. Clifton*, 682 F.3d 665, 678 (7th Cir. 2012)).

Here, plaintiff has submitted evidence sufficient to infer that REF International AB, through its officers, has taken actions that have injured plaintiff in Wisconsin, including contacting plaintiff about the Florida expansion and permitting other distributors to sell products into Wisconsin. In addition, plaintiff has alleged that REF International AB has blurred the corporate distinction between its Swedish and American companies such that REF International AB should have expected to be subject to personal jurisdiction here. At this stage, these allegations appear sufficient to plead personal jurisdiction or at least to overcome a claim of futility. Accordingly, the court will grant plaintiff's motion to amend the complaint to include REF International AB as a defendant, and to proceed with formal service.

### B. Additional WFDL and Contract Claims

Finally, plaintiff seeks to add additional WFDL and contract claims against both defendants REF North America and REF International AB based on the companies' recent changes to plaintiff's distributorship arrangement, including overhauling the dealer rewards program, requiring detailed monthly sales reports that were previously not required,

terminating the plaintiff's ability to pay by credit card, and limiting plaintiff's opportunities to order REF products to only specific weeks each month.  Plaintiff alleges that defendant lacked good cause to undertake such actions, and that even if it did have good cause, it failed to comply with the WFDL's notice and cure requirements.

Defendant responds that these allegations do not state a claim under the WFDL because these more recent changes were system-wide, and nondiscriminatory affecting all distributors equally and did not alter plaintiff's competitive circumstances.  *See E. Bay Running Store, Inc. v. NIKE, Inc.*, 890 F.2d 996, 1000 (7th Cir. 1989) (WFDL does not prohibit "nondiscriminatory, system-wide" changes that are not an "underhanded attempt on the part of [the grantor] to drive any individual dealer out of business and thereby usurp the good will which that dealer had generated") (citations omitted).[4]  However, defendant's arguments rely on factual allegations that can seldom be resolved at the pleading stage, nor have defendants even attempted to present contrary evidence to the court.  Instead, defendants rely on certain of its communications to show that all distributors are impacted by changes, but this only shows the proposed change is intended to be system-wide, not that it is "nondiscriminatory," particularly since plaintiff appears to be defendant's only dealer with an exclusive territory. (Dkt. #39) (defendant's counsel noting that very few of its distributors even have written agreements).  In addition, plaintiff alleges that defendant has implemented these changes at least in part to create a reason to deem plaintiff in breach of the dealership agreement.  Nor do defendants point out any case law to support its

---

[4] Neither side addresses whether WFDL notice is required for system-wide, nondiscriminatory changes. The court need not resolve this issue now, however, because plaintiff suggests that the changes are discriminatory, in that they were motivated, at least in part, to target plaintiff.

11

conclusion that this defense must be affirmatively anticipated and alleged by plaintiff in the complaint. Finally, even if ripe for review at the pleading stage, this argument applies to the claims under the WFDL, not to plaintiff's breach of contract claims. Because plaintiff's allegations are sufficient to state a plausible claim for relief under both the WFDL and contract law, the court will grant this portion of the motion to amend.

## ORDER

IT IS ORDERED that:

1. Defendant's motion to modify the preliminary injunction order (dkt. #48) is DENIED.

2. Plaintiff's motion to amend the complaint (dkt. #59) is GRANTED.

3. The parties joint motion to amend/correct the pretrial conference order (dkt. #68) is DENIED.

Entered this 15th day of November, 2023.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge