IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BRAVA SALON SPECIALISTS, LLC,

|  |  |  |
|---|---|---|
| | Plaintiff, | OPINION AND ORDER |
| v. | | 22-cv-695-wmc |

REF NORTH AMERICA, INC. and
REF INTERNATIONAL AB,

                    Defendants.

Plaintiff Brava Salon Specialists, LLC ("Brava"), a Wisconsin-based wholesale distributor of REF haircare products manufactured in Sweden, alleges that defendants REF North America, Inc. ("REF NA") and REF International AB ("REF Int'l") breached a distributor agreement by permitting another distributor to sell REF products online, including in Brava's exclusive territories, and by imposing additional obligations on Brava without proper notice or justification. Brava is proceeding to trial on claims for violations of the Wisconsin Fair Dealership Law ("WFDL"), breach of contract, fraudulent misrepresentation, and breach of the duty of good faith and fair dealing. (Dkt. #70.) Although REF Int'l, which is based in Stockholm, has not appeared as a party in the lawsuit thus far, REF NA, which is its authorized North American subsidiary located in Massachusetts, has filed counter-claims against Brava for breach of contract, breach of the duty of good faith and fair dealing, and declaratory relief under the WFDL; all based on Brava's own, alleged failure to comply with the terms of the parties' distributor agreement. (Dkt. #76.)

The case is scheduled for a jury trial on April 7, 2025, with final pretrial conferences

("FPTC") scheduled for March 26 at 10:30 a.m. and April 2 at 2:30 p.m, and a third, if necessary, on April 4 at 10:00 a.m.  This order addresses the parties' motions in limine. Brava has filed ten motions in limine and defendant REF NA has filed three.  Brava has also filed a motion to bifurcate the trial (dkt. #161), which will be granted according to the court's standard practice.

OPINION

## A. Brava's Omnibus Motion in Limine (dkt. #162)

### 1. Exclude or limit testimony of witnesses

Brava argues that defendant REF NA should be precluded from calling several witnesses who were disclosed on the last day of discovery, May 31, 2024, without providing the subjects of the discoverable information they possessed.  (Dkt. #162, at 3.)  Those witnesses, which were subsequently described with more detail in supplemental disclosures on February 21, 2025, are:  (1) a "Keeper of Records" for Amazon.com ("Amazon"); (2) Lindsay Farrell; (3) Larry Drew; (4) Ward Bassett; and (5) Em Eastman.  (*Id*. at 3-4.) Farrell, Drew, and Bassett are distributors of REF products in other regions of the United States; Eastman is a former Brava employee.

Brava has alleged that REF NA, which previously prohibited the sale of its products directly to consumers online, violated the WFDL by changing its position related to online sales, requiring distributors to file monthly sales reports, terminating its acceptance of credit card payments by distributors, limiting Brava's opportunities to order REF products, and making changes to its rewards program.  (Dkt. #70, at ¶¶ 5-7.)  The proposed

2

testimony from the Amazon Keeper of Records and the distributor witnesses appears related to Brava's allegation that defendant REF NA fundamentally altered Brava's competitive circumstances in violation of the WFDL by instituting these changes at a system-wide level after the court entered a preliminary injunction ordering REF to: (1) continue referring all orders for REF products originating from or seeking shipment to Wisconsin, Minnesota, Iowa, and North Dakota to Brava as its exclusive distributor of REF products in that territory; (2) make all reasonable efforts to ensure that its authorized distributors and retailers discontinue the sale of REF products online into the states of Wisconsin, Minnesota, Iowa, and North Dakota; and (3) fulfill Brava's purchase orders on an equal, non-discriminatory basis with all other distributors.  (Dkt. #42.)

Brava's primary concern is that the distributor witnesses are expected to testify about their experience with REF and whether selling REF products online is preferred by distributors in other states.  More specifically, Brava points out that REF distributors were asked by REF NA to respond to a letter -- issued by its President of Sales Paul Connolly -- about whether they were "supportive of establishing a REF storefront on Amazon" under principles described in the letter.  (Dkt. #162, at 6 (setting out the letter and referencing Dkt. #58-5).)  Brava argues that such testimony is:  (1) irrelevant to whether defendant REF NA violated the WFDL and the distribution agreement; (2) unfairly prejudicial, because Brava has an additional contractual protection against direct-to-consumer sales, which might not exist for other distributors; and (3) lacks documentary support because REF NA has not produced the contracts with other distributors or communications with other distributors regarding the letter, and the time for production has passed.  (Dkt. #162,

at 6-8.)  Even if the witnesses are permitted to testify, Brava asks that at least the scope of their testimony be limited to what the case is about:  whether REF NA violated the WFDL and the distribution agreement.  (*Id*. at 5.)

Brava also seeks to limit Eastman's testimony as a former employee who will reportedly testify about her efforts to work cooperatively with REF on its education platform, as well as retaliation she experienced from Brava and Brava's owner, James Marcks, in addition to "the lack of sales efforts being made by Brava Salon in its territory." (Dkt. #162, at 4.)  In particular, Brava argues that Eastman should be precluded from testifying about a "lack of sales efforts," because it is not an issue at trial and bears a significant risk of prejudice given the acrimonious end to her employment relationship with Brava.  (*Id*. at 8.)

Defendant REF NA argues that the subject of the information possessed by these witnesses was described in more detail during supplemental disclosures and should be admitted without limitation.  (Dkt. #172, at 2-3.)  Specifically, REF NA argues that the disclosed scope of the distributor witnesses' testimony includes issues that are central to Brava's claims and defenses in this lawsuit, which involves the sale of REF products on Amazon and the witnesses' experiences as REF distributors.  (*Id*. at 3.)   REF NA further argues that the witness testimony by Ms. Eastman is relevant to:  its counterclaims against Brava; to counter other witnesses designated by Brava (Jocelyn Acuna, Rebecca Wood, Lynn Aspinwall, and Anthony Edge) about their experience with shipping and payment issues with REF NA; and to bolster its assertion that Brava was not making good faith efforts to carry out education programs about REF products as required by the parties'

distributor agreement. (*Id*. at 4.) Finally, REF NA represents that it does not intend to introduce documents or communications as exhibits not timely produced in discovery. (*Id*. at 3.)

Brava's motion is GRANTED in part to the extent that either side seeks to introduce any previously undisclosed documents subject to production under Federal Rules of Civil Procedure 26 and 37. The court RESERVES a ruling on the remainder of this motion in limine and will consider the timeliness and adequacy of last-minute witness disclosures at the FPTC, as well as their possible relevance.

## 2. Exclude inadmissible evidence regarding current payment disputes

Brava seeks to exclude any evidence concerning disagreements between the two parties regarding payment disputes. (Dkt. #162, at 8-9.) While Brava acknowledges that the parties have "engaged in extensive communications" regarding unspecified payment issues, it also notes that REF NA has neither raised in any of its pleadings any issues related to these payment disputes. (*Id*. at 9.) As a result, Brava believes that evidence regarding payment disputes is irrelevant. (*Id*.)

Defendant REF NA agrees that neither party should be permitted to introduce at trial any evidence regarding a payment dispute, which reportedly began in January of 2025 and were resolved between the parties out of court. (Dkt. #172, at 6.) Therefore, REF NA argues that this motion in limine is moot. REF NA notes, however, that if either party seeking to introduce such evidence relating to this dispute, which includes claims by Brava that defendant REF NA wrongfully withheld a shipment, then the door to this issue will have been re-opened. (*Id*. at 6-7.) Thus, while the court will GRANT Brava's motion,

5

there appears some uncertainty as to whether this motion could be revisited outside the presence of the jury at trial and the court RESERVES on this issue and will consider further argument from the parties at the FPTC.

### 3. Exclude inadmissible hearsay

Brava also seeks to exclude any testimony qualifying as inadmissible hearsay. (Dkt. #162, at 9-11.) Brava raises a particular concern that REF NA may attempt to solicit hearsay during testimony from the Amazon Keeper of Records, Paul Connolly, and Jan Ernstberger about "communications" with other distributors regarding a proposal to establish an authorized REF storefront on Amazon. (*Id*. at 9-10.) As noted above, Mr. Connolly is REF NA's President of Sales in the U.S. Mr. Ernstberger is the founder of REF, serves as chairman of the board for REF Int'l, and is a director and treasurer of REF NA.

REF NA responds that any testimony from Connolly and Ernstberger about complaints received from customers regarding the sale of REF products on Amazon will not be offered for the truth of those communications, but for the effect on the listener as to customer dissatisfaction. (Dkt. #172, at 8.) Reasoning further that both parties should be precluded from attempting to submit inadmissible hearsay under Federal Rule of Evidence 801, REF NA argues that this motion in limine is too general to lend itself to an enforceable court order. (*Id*. at 7.) On that point, the court agrees with defendant. Therefore, while the court will obviously exclude inadmissible hearsay at trial, it will RESERVE on the substance of this motion in limine for further discussion at the FPTC.

4. **Exclude evidence regarding matters on which defendant changed course on the last day of discovery or new claims for which it failed to produce responsive documentation**

Brava next seeks to exclude supplemental discovery responses that were served "on the final day of the extended discovery period" "flipp[ing] multiple answers" and doing "an about face." (Dkt. #162, at 11.) Brava specifically takes issue with defendant's supplemental admission "denying that Brava meets/exceeds its sales goals, vigorously promotes REF products, performed exceptionally, etc." (*Id*.) Brava notes that these last-minute switches were provided without any documentation regarding how its performance relates to other distributors during the same time period and ignore the role played by the constant inventory shortages that have impacted REF's sales to Brava in the past year. (*Id*. at 12.) Brava further argues that this type of information, which is presumably an attempt to create "good cause" to terminate Brava as a distributor, is irrelevant and cannot be used as justification for actions previously taken. (*Id*.)

Defendant REF NA argues that nearly two years have passed since they first responded to Brava's discovery requests, and the circumstances surrounding the parties' relationship have changed drastically, including Brava's performance as a REF distributor. (Dkt. #172, at 9.) To the extent that Brava intends to present evidence of breach of contract continuing to the present day, REF NA also argues that it intends to present evidence in defense by claiming its own breach of contract by Brava, which it has asserted both as an affirmative defense and a counterclaim. (*Id*.) Likewise, REF NA argues that it is entitled to present evidence showing that system-wide changes were made with good reason and made to all distributors equally, without targeting Brava. (*Id*. at 10.)

In view of REF NA's counterclaim for breach of contract, the court will not preemptively exclude evidence to that effect. However, the court agrees that any *substantive* shift in discovery responses on the last day of discovery is unfair and void. Further, to the extent REF NA intends to offer proof of breaches of contract for which timely notice and opportunity to cure was not offered Brava, those too are excluded. However, as previously explained, it is settled that non-discriminatory, system-wide changes do not generally constitute a "substantial change in competitive circumstances" for purposes of a claim under the WFDL. *East Bay Running Store, Inc. v. NIKE*, 890 F.2d 996, 999-1000 (7th Cir. 1989). As a result, REF NA is entitled to present this type of evidence in its defense to Brava's claims.

Accordingly, to the extent Brava's motion in limine seeks to exclude evidence that Brava may have breached the distributor agreement by refusing to implement REF NA's system-wide changes in a non-discriminatory manner, it is DENIED IN PART, but Brava's motion is GRANTED IN PART with respect to any last-minute substantive changes to its discovery responses or previously undisclosed documents subject to production under Federal Rules of Civil Procedure 26 and 37. The court encourages counsel for the parties to meet and confer in advance of the FPTC to discuss the impacts of these rulings and will invite further discussion and clarification during the FPTC.

### 5. Judicial notice of conceded or waived arguments

Brava asks the court to take judicial notice that: (1) online sales by rival distributor Sayn Beauty would violate the WFDL; (2) there was no good cause to allow such sales; (3) REF did not provide proper notice for online sales; (4) the appointment of another

distributor in Iowa was a violation of the WFDL, done without good cause or proper notice; (5) the post-injunction changes caused Brava harm; and (6) there is a binding contract between Brava and REF such that "sales of Sayn products" would violate that contract. (Dkt. #162, at 14.)  In support, Brava points to the parties' filings on summary judgment and the fact that REF NA did not dispute these facts in its brief.   (*Id*.)

Certainly, a court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Defendant REF NA denies that it has conceded or waived any of the arguments referenced by Brava, and disputes each of the identified issues.  (Dkt. #172, at 11-13.)  In particular, REF NA notes that Brava's argument about its appointment of another distributor in Iowa was rejected by the court already on summary judgment.  (*Id*. at 12) (quoting from Dkt. #143, at 15-17.)

The court agrees that Brava's motion appears premised on material facts that remain in dispute.  Whether or not REF NA violated the WFDL or breached the distributor agreement, before or after the preliminary injunction entered in this case, are factual issues for the jury to decide unless the evidence at trial should make plain that a disputed issue of fact does not exist and an instruction as a matter of law is appropriate.  Accordingly, Brava's motion for judicial notice is DENIED at this time.

### 6.  Exclude evidence related to alleged damages

Brava notes that REF NA has brought four counter claims:  (1) breach of contract; (2) breach of the duty of good faith and fair dealing; (3) declaratory judgment; and (4)

violation of the WFDL.    (Dkt. #162, at 15 (citing Dkt. #76, at 20-22).)    In its supplemental discovery disclosures on May 31, 2024, Brava represents that REF NA stated that the only computation of damages it was seeking was termination of the distribution agreement between REF and Brava due to Brava's breach of contract.  (Dkt. #162, at 15 (citing Mederson Decl., Exh. B).)  Because it disclosed no other theory of damages, Brava argues that REF NA should be precluded from "pursuing damages and introducing evidence or argument related to damages it purportedly suffered on account of Brava."  (Dkt. #162, at 15.)

Defendant REF NA argues that this motion need not be ruled on because its counterclaims against Brava are declaratory in nature.  (Dkt. #172, at 13.)  Defendant REF NA confirms that it does not seek to introduce evidence or argument related to any damages other than what was pleaded in their counterclaims, which seek only declaratory and injunctive relief.  (Dkt. #172, at 14; Dkt. #76, at 23.)  However, REF NA also now purports to seek an award of "compensatory, contract, and/or punitive damages in an amount to be determined at trial[.]"  (*Id*.)  Having failed to make any apparently timely pleading or disclosure under Rule 26 for any such damages, the court will GRANT Brava's motion except to allow any appropriate offset that REF NA may have disclosed and be entitled to from damages proven by Brava.   On this subject alone, the court will consider further argument from the parties at the FPTC.

### 7.  Exclude evidence or argument that contradicts judicial admissions

Brava further seeks to exclude evidence or argument contradicting judicial admissions by REF NA that it authorized Sayn Beauty to sell REF products on Amazon at

the time the lawsuit was filed.   (Dkt. #162, at 20.)   In accordance with the court's

procedures, Brava notes that it filed proposed findings of fact in support of its motion for

a preliminary injunction.  (Dkt. #5.)  Specifically, Brava set forth facts stating that:  Sayn

had begun offering REF products on Amazon; REF was "in fact permitting [Sayn] to sell

on Amazon"' and REF represented that Edward Ernstberger was "preparing a letter to all

distributors explaining REF's momentous decision to begin direct-to-consumer sales on

Amazon."  (*Id*., ¶¶ 39-41.)

More specifically, Brava's proposed findings of fact and defendant REF NA's

responses were as follows:

> 39. On November 29, 2022, Mr. Marcks discovered that SAYN Beauty had
> begun offering REF products for sale direct to consumers online through
> Amazon.com ("Amazon"). This finding was shocking to Brava, as REF
> products were explicitly prohibited by the manufacturer from being sold on
> Amazon or through any other online retail outlet. Indeed, the exclusive
> availability of REF products in salons is a significant part of the brand's
> appeal to salon customers. In compliance with REF's longstanding preferred
> sales model, to this date, Brava has never and remains unable to sell REF
> products online. SAYN Beauty offers over 60 REF products for sale on
> Amazon at below-market prices. ([Dkt. 4], ¶32, Exh. G)

> Response: It is not disputed that SAYN was authorized to sell on Amazon.
> Without knowledge as to Brava's discovery of this or reaction thereto. The
> remaining allegations refer to the written agreement of the parties, to the
> extent that reference is inaccurate, it is denied.

> 40. Mr. Marcks immediately sought an explanation from REF for this
> reversal of longstanding policy and practice. On November 30, 2022, Mr.
> Connolly confirmed to Mr. Marcks that REF was in fact permitting SAYN
> Beauty to sell on Amazon.  (Id., ¶34, Exh. I)

> Response: This is not disputed.

> 41. Mr. Connolly asserted that Edward Ernstberger was preparing a letter to
> all distributors explaining REF's momentous decision to begin direct-to-
> consumer sales on Amazon. A week later, as of the time of filing this action,

Brava has not received the promised letter from Edward Ernstberger. (Id.)

Response: This is not disputed.

(Dkt. #21, at ¶¶ 39-41).  Pointing to these responses, Brava argues that REF NA must be bound by its failure to dispute that Sayn Beauty was authorized and permitted by REF NA to sell products online.  (Dkt. #162, at 17-18.)

Defendant REF NA argues that the statements or concessions identified by Brava are not clear, deliberate, or unequivocal, and should not be deemed conclusive by the court, much less a judicial admission.  (Dkt. #172, at 14-15.)  As the court noted previously when Brava made similar arguments at summary judgment, Brava has not shown that failing to dispute a proposed finding of fact for purposes of deciding a preliminary injunction or motion for summary judgment qualifies as a "judicial admission."  (Dkt. #143, at 11 n.6.) "Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them." *Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir. 1995).  A statement by counsel may be considered a judicial admission "if it was made intentionally as a waiver, releasing the opponent from proof of fact." *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001); *In re Lefkas Gen. Partners No. 1017*, 153 B.R. 804, 807 (N.D. Ill. 1993) ("Any 'deliberate, clear and unequivocal' statement, either written or oral, made in the course of judicial proceedings qualifies as a judicial admission.").  "A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party." *Keller*, 58 F.3d at 1198 n. 8 (quoting John William Strong, *McCormick on Evidence* § 254 at 142 (1992)).

12

At summary judgment, this court cited two cases in support of its conclusion that defendant's failure to dispute facts in response to Brava's proposed findings was not a judicial admission. (Dkt. #143, at 11 n. 6 (citing *Aitken v. Debt Mgmt. Partners, LLC*, No. 1:12-CV-01511-JEH, 2015 WL 433508, at *2 (C.D. Ill. Feb. 2, 2015) (statements identified as "undisputed" at summary judgment were *not* "judicial admissions" that bound parties at later stages of the case); and *Greenwich Indus., L.P. v. Specialized Seating, Inc.*, No. 02 C 5000, 2003 WL 21148389, at *1 (N.D. Ill. May 16, 2003) (same) (emphasis added)). While Brava attempts to distinguish both *Aitken* and *Greenwich* (dkt. #165, at 17-18), it fails to present *any* binding or persuasive authority showing that a party's response to a proposed finding of fact qualifies as a "clear and unequivocal" admission that is conclusive under the circumstances of this case, particularly when REF NA subsequently denied in its answer authorizing Sayn to sell REF products on Amazon to customers in Brava's territory. (Dkt. #43, at 1, 11.) REF NA similarly denied authorizing or permitting Sayn to sell REF products online in answers to interrogatories. (Dkt. #172, at 14.)

Brava acknowledges that this so-called admission by REF NA regarding whether it authorized Sayn to sell its products online "go[es] to the heart of the parties' dispute." Because this dispute implicates questions of fact for the jury to decide, Brava's motion in limine on this issue is DENIED.

### 8. Preclude defendant from contesting the existence of a dealership in Wisconsin and Minnesota

Brava also seeks to preclude REF NA from contesting the existence of its WFDL-protected dealership in the territories of Wisconsin and Minnesota. (Dkt. #162, at 20).

In particular, Brava again argues that REF NA conceded at summary judgment the existence of such a dealership at summary judgment. (*Id*.) REF NA disagrees, citing *Morley-Murphy Co. v. Zenith Electronics, Corp*., 142 F.3d 373 (7th Cir. 1998), and repeating an argument that the court previously found unpersuasive about whether the WFDL applies to out-of-state or extraterritorial dealerships. (Dkt. #172, at 15; Dkt. #143, at 15-16.)

At summary judgment, the court found that REF NA *had* conceded it had "a dealership relationship with Brava that was protected by the WFDL, but that REF NA argued that the protection only extends geographically as set forth expressly in the original, written dealership contract -- *i.e*., an exclusive right to distribute REF products in Wisconsin and Minnesota." (Dkt. #143, at 15.) Brava argued persuasively that *Morley-Murphy* was distinguishable because its distribution of REF products in North Dakota and Iowa was part of its exclusive dealership contract for Wisconsin and Minnesota. (*Id*. at 15-16.) The court concluded, however, that a reasonable jury could not find that the protections of the WDFL extended to Brava's activities in Florida. (*Id*. at 17-18.) In the end, the court concluded that it would consider Brava's WFDL claims "only as they may apply to Brava's Wisconsin, Minnesota, North Dakota and Iowa contiguous dealerships." (*Id*. at 18.) Although REF NA wishes to introduce evidence or argument on the issue of whether the WFDL protects a dealership outside of Wisconsin, it provides no additional authority in response to Brava's motion in limine and the question of law about the WFDL's application is not one for the jury to decide.

Accordingly, the court GRANTS Brava's motion, but directs counsel for the parties to meet and confer promptly on the implications of this rule and will consider any need

for further clarification at the FPTC.

### 9. Preclude the "Empty Chair" defense

Brava contends that defendant REF Int'l has been properly served and has defaulted on its obligations to participate in this case. (Dkt. #162, at 21.) Brava contends, therefore, that defendant REF NA should not be allowed to present an "empty chair" defense and asks the court to preclude testimony that REF NA was not the party involved with the decision-making regarding online sales. (*Id*. at 22.)

The so-called "empty chair" defense is one in which a defendant points the finger at another party not in the case to deflect blame. *Plyler v. Whirlpool Corp.*, No. 08C6637, 2012 WL 469883, at *3 (N.D. Ill. Feb. 13, 2012) (citing *McDermott, Inc., v. AmClyde*, 511 U.S. 202, 217 (1994)); *Chatham v. Davis*, No. 11-cv-650, 2014 WL 12659450, at *1 (S.D. Ill. Sept. 25, 2014). The defense is typically available to defeat a claim of negligence by establishing that the acts of another not a party to the suit were the proximate cause of plaintiff's harm. *E.g.*, *Harms v. Laboratory Corp. of Amer.*, 155 F. Sup. 2d 891, 909 (N.D. Ill. 2001).

Defendant REF NA disputes that Stockholm-based REF Int'l has been properly served in compliance with Federal Rule of Civil Procedure 4(f), and further argues that Brava's motion should be denied for that reason. (Dkt. #172, at 16-18.) Whether REF Int'l has properly been served is irrelevant, particularly in light of the fact that it intends to present testimony from REF founder Jan Ernstberger, who serves as a corporate officer of both REF Int'l and REF NA and there is *no* reasonable dispute that REF NA is REF International's agent, if not standing in its shoes for purposes of binding REF International

to the outcome of this case.  Under these circumstances, REF NA may not proceed with an "empty chair" defense.  *See Massey v. Cassens & Sons, Inc.*, No. 05-cv-598, 2007 WL 610956, at *1 (S.D. Ill. Feb. 23, 2007) (granting plaintiff's motion in limine to preclude the "empty chair" defense).  Accordingly, Brava's motion in limine to preclude the "empty chair" defense is GRANTED.

### 10. Sequestering non-party witnesses

Brava moves the court to order that all non-party representative witnesses be sequestered during witness testimony.  (Dkt. #162, at 22.)  Brava states that it intends to designate its owner, James Marcks, as its party representative.  (*Id*.)  Defendant REF NA states that it intends to designate Jan Ernstberger, Edward Ernstberger, and Paul Connolly as its party representatives.  (Dkt. #172, at 18.)  Apart from party representatives, REF NA agrees that all other witnesses disclosed by both parties may be sequestered during witness testimony for the duration of the trial, provided that counsel would not be prohibited from disclosing trial testimony to a sequestered witness for any purpose, including impeachment.  (*Id*.)  Subject to defendant's agreement, Brava's motion in limine regarding sequestration of non-party witnesses is GRANTED.  REF NA is further directed to designate *one* party representative for purposes of the sequestration order.

## B.  Defendant REF NA's Motions in Limine

### 1.  Exclude certain testimony as to damages (dkt. #150)

Brava claims that defendant REF NA made fraudulent misrepresentations about whether Brava would be REF's exclusive dealer in Florida.  (Dkt. #70, at ¶ 115.)  In reliance

on those false representations, Brava further alleges that it invested in increasing its ability to distribute REF products, including the purchase of a $1.5 million property in Florida.[1] (*Id.* at ¶ 116.)  In its supplemental disclosure under Federal Rule of Civil Procedure 26(a), Brava also indicates that it intends to present testimony from its owner, James Marcks, about damages it incurred "in reliance on REF's representation that Brava would be REF's exclusive distributor in Florida."  (Dkt. #150-1, at 3.)  The calculated loss involves the purchase of a facility in Punta Gorda, Florida, a mini-van, electric bicycles, taxes, and insurance.  (*Id.* at 4.)

Defendant REF NA contends that Brava should be precluded from introducing evidence of reliance damages concerning the Florida property, which was purchased by Brava Destination LLC, as well as other expenses incurred in Florida because those losses were not incurred by "Brava Salon Specialists, LLC." (Dkt. #150, at 1-2.)  REF NA argues, therefore, that Brava has "no basis to allege damage" with regard to the purchase of the property.  (*Id.*)

However, based on an announcement by Connolly that Brava would be REF's exclusive distributor in Florida, Brava explains that it began to invest in the Florida market. (Dkt. #179, at 3.)  It was allegedly for this purpose that Marcks, through Brava Destination LLC, closed on the Punta Gorda facility and subsequently leased that property to Brava Salon Specialists LLC.  (*Id.* at 4.)  But for REF NA's representations, Brava argues that it would not have agreed to lease the facility, renovate the property, or purchase other items for use in Florida.  (*Id.*)  Brava also argues that defendant fails to show that it is precluded

---

[1] Plaintiff did not move for summary judgment on its fraudulent misrepresentation claim.

from seeking consequential damages under Wisconsin law, *see Chevron Chem. Co. v. Deloitte & Touche*, 176 Wis. 2d 935, 951, 501 N.W.2d 15 (1993), which applies to Brava's state-law claims in this diversity case.  *See, e.g., McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) ("When no party raises the choice of law issue, the federal court may simply apply the forum state's substantive law.").

The court agrees with Brava and will allow it to present evidence of damages incurred based on representations made by REF NA.  Accordingly, defendant's motion in limine regarding the exclusion of testimony on certain damages (dkt. #150) is DENIED.

### 2.  Exclude certain expert testimony on business valuation (dkt. #151)

Defendant REF NA next argues that Brava should be precluded from offering argument or presenting testimony on a business valuation of Brava by its owner, Mr. Marcks, on the grounds that he lacks the requisite specialized knowledge and experience to offer an expert opinion on Brava's business value.  (Dkt. #151, at 1.)  REF NA argues, therefore, that the testimony should be excluded under Federal Rule of Evidence 702.

Brava responds that Mr. Marcks, who is described as an accomplished businessman with over 30 years of relevant experience in the industry, will *not* be offering expert testimony regarding business valuations generally or the value of someone else's business. (Dkt. #179, at 4.)  Instead, Mr. Marcks will offer lay opinion testimony about the value of the business that he founded and works for on a daily basis and the effect on that business if defendant REF NA were allowed to sell products online.  (*Id*. at 5.)

Brava contends that the proposed testimony from Mr. Marcks is admissible because the WFDL recognizes two measures of damages:  (1) lost profits (past and future) and (2)

lost business value.  *Bush v. Nat'l Sch. Studios, Inc.*, 131 Wis. 2d 435, 444, 389 N.W.2d 49 (Ct. App. 1986) (citation omitted).  "Both good will and future profits are computed into lost business value." *Id*. at 444.  In WFDL cases, courts have shown leniency to dealers attempting to prove damages.  *E.g., Lindevig v. Dairy Equip. Co.*, 150 Wis. 2d 731, 739-40, 442 N.W.2d 504 (Ct. App. 1989) ("Damages for lost profits need not be proven with absolute certainty, but the claimant must produce sufficient evidence, in this case, the books and records, on which to base a reasonable inference as to a damage amount.").  The general rule in Wisconsin is that "a non-expert owner may testify concerning the value of their property, regardless of whether it is realty or personalty."  *D'Huyvetter v. A.O. Smith Harvestore Prods.*, 164 Wis. 2d 306, 323, 475 N.W.2d 587 (Ct. App. 1991) (citing *Perpignani v. Vonasek*, 139 Wis. 2d 695, 737, 408 N.W.2d 1).  The *weight* to be given this testimony is for the trier of fact.  *D'Huyvetter*, 164 Wis. 2d at 323.

The Federal Rules of Evidence are not to the contrary.  A comment to Federal Rule of Evidence 701 states that an "owner or officer of a business" may testify "to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." Fed. R. Evid. 701 Advisory Comm. Note (2000). Moreover, "[s]uch opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because the particularized knowledge that the witness has by virtue of his or her position in the business.").  *Id*.; *see also Lee v. Walro*, 567 B.R. 802, 810 (S.D. Ind. 2017) (noting that the Federal Rules of Evidence "suggest an expert is not always necessary to value a business" and upholding non-expert testimony to value a corporation in the context of 11 U.S.C. § 550(a)).  The

Seventh Circuit has also held that "the owner of an established business with a documented history of profits may testify as to his expectation of continued or expanded profits when that opinion is based on his 'knowledge and participation in the day-to-day affair of [his] business.'" *Von Der Ruhr v. Immtech International, Inc*., 570 F.3d 858, 862-63 (7th Cir. 2009) (quoting *Lightning Lube, Inc. v. Witco Corp*., 4 F.3d 1153, 1175 (3d Cir. 1993)); *see also Kestenbaum v. Falstaff Brewing Corp*., 514 F.2d 690, 698-99 (5th Cir. 1975) (collecting cases for the proposition that "an owner is competent to give his opinion on the value of his property").

Here, Brava reasonably argues that, as its owner and founder, Marcks is uniquely situated to understand the value of his own business. The court agrees and sees no reason to preclude his testimony subject to cross examination. Accordingly, defendant's motion in limine on this issue (dkt. #151) is DENIED.

### 3. Exclude parole evidence (dkt. #158)

Finally, defendant REF NA contends that Brava should be precluded from introducing parole evidence concerning the parties' distribution agreement. (Dkt. #157.) Specifically, REF NA argues that the agreement is not ambiguous as it relates to the parties' dispute about the "Territory" or the Territories in which Brava was granted distribution rights, which included "Wisconsin, Minnesota, and "other neighbor states in USA where REF for the time being has no distributor," but which decidedly did *not* include Florida. (*Id*. at 5.) Therefore, REF NA contends that Brava should not be allowed to present other extrinsic evidence about whether Florida was part of the "Territory" covered by the agreement. (*Id*. at 5-6.)

This issue was addressed at summary judgment, in which the court concluded that Brava failed to present evidence showing that it had distributorship rights in Florida. (Dkt. #143, at 17.) Based on the available record, the court noted that the parties' written contract did *not* contemplate an extension of its terms outside the Midwest. (*Id*. at 18.) The court noted further that the parties' relationship in Florida appeared to stand on its own. (*Id*.)

In light of this ruling on summary judgment, Brava is not pursuing a claim at trial that any Florida territory is governed by the distributor agreement. (Dkt. #179, at 8-9.) Brava further agrees that parole evidence is not needed to determine the scope of its territory under the distributorship agreement where Florida is concerned. (Id. at 10-11.) Thus, REF NA's motion in limine to preclude parole evidence is MOOT.

As an additional matter, Brava, in opposing defendant's motion in limine, argues that REF NA wrongly claims that Brava has distributorship rights to only portions of North Dakota and Iowa, and asks the court to bar REF NA from arguing that its territory does not include the full measure of both states. (Dkt. #179, at 11.) The court declines to do so. First, Brava did not raise this argument in its omnibus motion in limine. Second, as noted at summary judgment, there are disputed questions of fact regarding the specific nature and scope of Brava's distributorship rights in North Dakota and Iowa. (Dkt. #143, at 16.) Because this is an issue for the jury to decide, Brava's request is DENIED.

ORDER

IT IS ORDERED that:

1. Plaintiff Brava Salon Specialists, LLC's motion to bifurcate the trial (dkt. #161) is GRANTED.

2. Plaintiff's omnibus motion in limine (dkt. #162) is GRANTED IN PART, DENIED IN PART AND RESERVED IN PART as set forth above.

3. Defendant REF North America's first two motions in limine (dkt. ##150, 151) are DENIED.  Defendant's third motion in limine (dkt. #158) is MOOT.

Entered this 21st day of March, 2025.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge